Good afternoon, Your Honor. Good afternoon. If I may please go to Andrew Smith for the appellant. In our briefs we cited two, I believe, BAP cases concerning the benefit of the bargain argument and they noted that it seems like there's no Ninth Circuit case or in fact any circuit court case and there's a split in our behalf. I understand they were 1991 or they were prior Cohen v. de la Cruz but I don't think that Supreme Court case trumped our case in that. What does your, what's your position regarding the case of Lazar v. Superior Court? Well we're correct on that because the quote states that a person in a case on fraud who has a cause of action for contractual fraud can get both benefit of the bargain damages and out-of-pocket but he can only get, he or she can only get the out-of-pocket on the fraud and can only get the benefit of the bargain on the contract. So it's quoted by the BAP and it's quoted wrong by the lines down when it's clear there's a confusion between a party who has these two causes of action and a cause of action getting both type damages. They make it clear in the cases they cite, make it clear that you only get your contract damages under your contract cause of action, you only get your tort or punitive damages, the out-of-pocket under the fraud cause of action. So it seems reasonable to me is that part of it's for contract, part of it's for tort, right? Right, and the CASI, the California Jury Instructions, which I think are the final word on California law, so states you can only get the benefit of the bargain if there's a fiduciary relationship and when my opponent cites cases in California to refute that, it's always a fiduciary benefit. I decided today to start probably arguing on the BAP cases and because we have a somewhat, there's a different, slight different cause of action in that we're in a federal court, we're under a bankruptcy statute and I maybe I just noticed these cases seem to talk about policy and whether a of using a benefit of a bargain under a 523A2 and I think that in the case of Inri Arrutio, I'm trying to pronounce right, 196 PR 279 of the eighth page of the case, they discuss another case, Freeman, and they give sort of the policy reasons why it would be very bad in this case, in the case they discuss, and in this case, to put a benefit of the bargain. As they say, part of the reasoning on the wording on 523A2 is gone because of Cohen versus Dela Cruz, because that made it clear that the exact wording of that statute that you only get what you parted with is wrong. You get all the tort benefits correct, but it's caused by fraud, not, you know, benefit of the bargain is not something caused by fraud, it's something you did not get, and why would it be bad to have a benefit of the bargain in this case or any 523A2? Freeman mentions it's too opened and dead, and I would add that it doesn't inure to the uniformity in the law to use an extreme example, not being facetious, and where a court would never give benefit of the bargain would be if I were to sell a person the value of the Brooklyn Bridge. Judge Corman would be mighty offended since he's from Brooklyn and he would not like the bridge sold. And maybe knows the value of the bridge, but I was wondering if I could show you another example, but so there the court would then say, well, we're not going to do benefit of the bargain. On another case, they may say we are going to do benefit of the bargain. May I ask you, is that your only issue on this appeal? Pardon me? Is that your only issue? No, that goes to the damages issue, and if we're right, then everything that counsel Bapps said that my client, you know, I don't agree, but he decided from the very beginning never to give the equipment. He had an intent to not give it. He used it to get a contract. Well, we would still win because without the typical tort damages is you get rid of the contract. He didn't have the right to the equipment except for the contract gave him the right to the thing he now says he lost, but we have another argument in that. Assume that I'm wrong on this and the courts going to hold it benefit of the bargain goes in there. The bankruptcy court and the Bapps gave too many damages, and that's by the way Freeman mentions giving double damages. The contract was if you pay off the arrears, the deferred deferred from before the UD case and the deferred after. You pay that off, you take your equipment. Now the, so the bankruptcy court and the Bapps gave appellee full value of the equipment and all the arrears. So we have another argument separate from the benefit of the bargain. They did not prove that the arrears that existed before the UD could have ever been collected as as we argued the deferred payment rule is that, I'm trying to find the case, yes, the deferred payment rule is that only if they lost some opportunity to collect, well then that would be damages. Kim, which the Bapps incorrectly cites, doesn't does not trump that. Kim says in dicta, well the new money rule isn't here. The Bapps really did I think some twisting around to provide new money by saying there's a new lease. The new lease is a new money because it's neutral, nobody gets an benefit of deferred payments that are not the new money itself. So I don't think if the court's not going to, you know, buy my first argument, I believe the damages should be lessened. Now of course, in fact, my opponent... I'm getting confused. I just want to understand, what do you agree the damages should be? Well, I hope you, the first argument I would say there'd be no damages at all because, well there would be, okay, there would be damages for conversion because that's another thing. This case, when we're in bankruptcy court, people try and fit it into a fraud and it's not. It's breach of contract and conversion. My client did something wrong all right. He, after doing the whole contract, which I think was a proper contract, and he gave Mr. Flegel the equipment, which Mr. Flegel was entitled to have, and then he did something which obviously is very core. Whoever hears it, you're almost blown away. He just went on with all his contractors and took all the stuff away. And it would be conversion, if you want to use a worse word, it might be theft. They didn't. So why am I arguing against fraud and saying perhaps I prefer conversion? Because, well, they didn't find conversion, but that's what this case really is. Breach of contract and conversion is partially dischargeable and treated differently in bankruptcy court. In a chapter 13, you don't necessarily have to pay the full amount on conversion, but you do fraud. So upset as people may be hearing these facts, I just don't think it should be jammed into a fraud mold when it can't be. And one last thing. My opponent, Mr. Sharf, seems to agree he'll get up and tell you, if he doesn't, about the deferred payments. Something has, some collection has to be deferred. But what he argued is, well, we gave this, Ifiori, a lower rent and we could have gotten more rent. Well, after the settlement agreement, Ifiori wasn't making no payments, he was making cash payments. They were lower than before and partially deferred. That's not giving up an opportunity. Mr. Pelley would have to show there was some third party, somebody else there who would pay higher. Because my client was paying something. For it to be damages, it has to be shown they had someone who was not paying something. So they just say, oh, he would have paid more had we not done the deal. I'll reserve the rest of my time. Very well. Mr. Sharf. Good afternoon, Your Honors. My argument today is informed by my careful review of this entire case, including the BAP memorandum and the underlying memorandum, as well as my own arguments and opposing counsel's arguments. I don't think that this is the best case to make the decision about benefit of the bargain damages, but I'm going to argue benefit of the bargain damages anyway. Before we get to benefit of the bargain and out-of-pocket, isn't counsel correct that rent that accrued prior to his client's misrepresentation approximately caused by that misrepresentation? In other words, you got a lease, rent was accrued, his client didn't pay. He then made these representations about what he would do. Those misrepresentations didn't cause, they weren't the approximate cause of the rent that had accrued prior to that time, were they? Well, it is true that something that occurs later in time cannot possibly cause that which the rent that had been accrued from point A to point B was owed, it was accrued, right? That's true, that's true. So that wasn't approximately caused by the misrepresentation? As of that point in time, that is definitely correct. So under those circumstances, how can those damages, if you will, be, if you will, considered to have been caused by the misrepresentation? Aren't they dischargeable as prior to the misrepresentation? Okay, I have many different arguments and all my arguments are tailored around that issue. Try this one first. Actually, this is one of them. I mean, first of all, the Bankruptcy Appellate Panel addressed this by arguing that we were entitled to benefit the bargain damages and there was a new settlement agreement and part of that settlement agreement, part of the quid pro quo, was a payment of this $32,700. Okay, so from your perspective, there's no requirement of approximate causation, it's just benefit of the bargain? That is partially correct. That's not the only leg upon which I'm standing. That's not the only basis of the argument. How many legs are on this? There's at least two more. One of them is, you know, for example, I mean, you know, Cohen versus Dela Cruz is the Supreme Court case on these issues. It's a case that divorced the word debt in to the extent obtained by fraud. The word debt is now unrelated to the extent obtained by fraud and that case involved a punitive damages award for a landlord who was charging more than he was allowed by rent control and debtor made a similar argument in that case that there was no harm, that the fraud did not cause that harm, therefore it wasn't to the extent obtained by and the United States Supreme Court ruled as long as it relates to the fraud, as long as it's a debt which relates to a fraudulent obligation. Take your point, even if I don't agree with your construction of the case. Let's just say hypothetically that Supreme Court said what you said it said. In what way does the previously accrued rental payment, how is that, how does that relate to the fraud, if you will? Very simple. We're not trying to recover the prior rent amount. We're only trying to recover some consideration that was promised in a new agreement. But the court in effect gave that prior rent, right? Well, I mean, maybe yes and maybe no. Look at it this way. If they had said no to that prior rent amount, perhaps my client would have said, okay, then I'll only do this if the rent is higher, right? And then we wouldn't be having this discussion. Didn't the Bankruptcy Court and the BAP expressly refer to this prior rent and include it? They did. Okay, so under those circumstances, don't you have to show how that relates to the fraud if you're going to have it survive? It relates to the fraud to the extent that it was part of a new agreement that was fraudulently induced. That's how it relates. In other words, you're saying that it can be baptized into the fraud by virtue of it being referenced? Is that what the idea is? Yes, and it could have been incorporated into the new fraudulently induced agreement in a different way through higher rent payments, and we wouldn't even be having this conversation because we wouldn't even know about it. Well, that seems to suggest you can convert something that's not proximately caused by a fraud and make it into a protected item that was caused by a fraud. Well, that would imply that my client knew fraud was happening, and my client did not know. His client did know. Let's go to the other part of this, which is the benefit of the bargain point. How does the Bankruptcy Court get to where it does where you get both out-of-pocket and benefit of the bargain? Is it Lazar? Is that what they relied upon? I think what the Bankruptcy Court was trying to do is to compensate my client for the harm that my client suffered, and my client suffered a lot of harm. So I'm going to give some examples. I mean, one example, and this is not directly related to your initial question, but my third example will be. The first example, and this was specifically discussed by the Bankruptcy Appellate Panel in its memo at page 17, which is Appellant's Excerpts of Record, page 469. What the Bankruptcy Appellate Panel did is they had sort of a secondary argument, and they essentially said, even if we're wrong about the benefit of the bargain damages, it doesn't matter because damages should have been higher. And part of my argument is that damages awarded, in fact, were too low. And on what basis did they determine that they should have been higher? Based on the fact that the unpaid rent amount of $141,185, which included the $32,700 that was the subject of our discussion, that that only included rent through December 2012, which is when the bankruptcy case was filed. In fact, the judge should have included rent all the way through the date of the judgment, or, well, excuse me, excuse me, should have included rent through May of 2013, which is when the new tenant, Marsha Takesh, took over and started paying rent. Then 10 percent interest on that amount through the date of the judgment. And the Bankruptcy Appellate Panel actually, according to their numbers, the actual damage figure should have been $180,000, which is more than $32,700 in addition to the amount assessed by them. Are you saying that where they got to that number by the accrued rent and so on and not with reference to the prior rent that accrued prior to the time? The mathematical calculation is a little bit complex. It's possible that the BAP got it wrong, but their ultimate conclusion is correct. These are hidden figures? No, they're not hidden. As a matter of fact, the Declaration of Ryan Flegal, which is an appellant's excerpt of record, Bate Stamp, page 103, Exhibit I, at paragraph 34, actually talks about how rent had, in fact, increased to $164,514 by May 2013, which is where the BAP must have gotten it from. They must have reviewed the record very carefully. The BAP then took that $164,000 and added 10% interest through the date of the judgment, and it came out to a number of over $180,000. They probably should not have included 10% interest on the $32,700 that preceded the date of the settlement agreement back in 2008. I acknowledge that, but even without that, I've done my own calculations. And even if you take that $164,514 figure, you back out $32,000, you add in 10% interest, it still comes out to $145,000, which is greater than the $141,185.23. Do you agree that they have some portion of the number wrong? I would have to go back and parse it word for word to see exactly what they did. They mentioned their own calculations without specifying precisely what they were. Would it have been a lower figure than they awarded or a higher figure? No, it would have been higher by at least $4,000, even under my own calculations. I think by their calculations, they were saying $180,000, which is almost $39,000 more than the $141,000 that was awarded. Can I ask you about the kitchen again? I'm sorry, say again? Can I ask you about the kitchen again? Yes. How is the destruction, the removal and the destruction of the equipment a product of a fraud? Oh, okay. Damages were awarded for that. That's the whole discussion about out-of-pocket. Right. I mean, the judge found that the representation and warranty in the agreement as to who owned the kitchen equipment back in 2008 was false. It was intentionally false. And that led them to enter into the agreement. Correct. But what happened here was that they took the equipment after the fact and just destroyed it. Correct. And whatever that amounted to, how is that destruction a product of a fraud? Well, you know, but for the fraud, my client would have owned the equipment. But for the fraud, my client would have— But for the fraud, he might have owned the equipment. But in the meantime, he took the equipment and destroyed it. The debtor took the equipment. The record is actually that the debtor put the equipment in storage and testified that he was trying to sell it off piecemeal. I thought he destroyed it. Well, you could have gotten it back, I assume, if he just put it back. Yeah, yeah. I just have two more examples of why damages are too low. One was the one pointed out by the BAP on page 17 of its memorandum, page 469 of the Pellon's excerpts of record. Another is, if you take a look at some of the trial transcripts, you know, we actually put an appraiser on the witness stand. And the appraiser, it's Pellon's excerpts of record, bait stand, page 167, M-1, testified that while the equipment in its piecemeal removed condition was worth $51,555, and recall the debtor spent over $200,000 on this equipment, that the cost of reinstalling the equipment would have been between 30% and 50% of that amount. And that's what my client—you know, that's what the contract said. My client was going to get the equipment already in there. So that's another $15,000 to $25,000. In addition to that, the agreement, the underlying settlement agreement, pages 72 through 74 in the excerpts of record, actually provided for the debtor's cooperation in leaving the equipment, the debtor's cooperation in leaving the premises if he was not able to pay rent and didn't pay rent, and leaving a turnkey facility. Part of that's on page 74, part of it's on page 72. And that's critical because the record also shows that in May of 2011, Marcia Tecesta came to light. Now, she's a person who in May of 2013 actually moved into the property. But in May of 2011, she made an offer of $100,000 to essentially buy the business and to have a turnkey operation and to move in. And that's actually on Appellant's excerpts of record, page 107, paragraph 4. It's a declaration of Marcia Tecesta. And, you know, the debtor did not agree to it because, of course, he wanted to keep the $100,000. He didn't want the $100,000 to go to its rightful owner, which is the landlord. And, you know, that's another $100,000 that my client lost. And what you'll see in the record is that later on Marcia Tecesta reduced that amount to $25,000. And finally, she not only got rid of it altogether because the equipment was missing but wanted four months of free rent and 10 months of no camp charges. And that was part of the damage as well. The point I'm trying to make is my client lost valuable collection remedies. You know, this agreement was reached in the hallway of an unlawful detainer court. And my client was minutes away or maybe hours away from getting an unlawful detainer judgment and probably two to seven days away from having it enforced. The debtor would not have had time to get the cherry pickers and the cranes to remove all the equipment. Part of what was removed was a walk-in refrigerator. I believe it was 9 feet by 13 feet. The debtor actually had to break an outside wall to remove it. You know, he did try to patch it up afterwards, but it was pretty extreme what was done. There were cherry pickers to take the air conditioning units off the top of the building. You know, the point is my client had valuable enforcement remedies in June of 2008 when the settlement agreement was executed that he gave up because of false representations, even with respect to the $32,700, which was the past-due rent at the time. I want to ask. Yes. The false representation he relied on, supposedly, was that his tenant owned the kitchen. Actually, it wasn't just that. That was one false representation, but more fundamental than that was the intent to ever perform that part of the agreement. And the judge found that there was promissory fraud, that the debtor never actually had the intent to ever perform that part of the agreement, to cooperate with the turnover, to leave the turnkey kitchen facility, to leave the equipment. None of that was ever there. So it wasn't just that the representation was false. It was also that there was sort of a deeper purpose. Your Honors, my reading of California law, and I see I have two minutes left, so I just want to get it all in here. My reading of California law is that there is a section of California law relating to the purchase, sale, or exchange of real property that does indicate that you don't get benefit of the bargain damages if there's fraud. That doesn't apply to this circumstance because it's not the purchase, sale, or exchange of real property. And the implication, negative implication, is that, of course, there is no such limitation. California Code of Civil Code Section 1709 speaks about a person who deceives another being liable for any damages. California Civil Code 3333 is similar. And, yes, you know, this Ninth Circuit Court of Appeals, in an earlier case called In re Saban, has already analyzed Cohen v. De La Cruz. And In re Saban is a case where there was a licensed contractor who entered into an agreement and represented that he was a licensed contractor. In fact, he was not. And the Ninth Circuit, this Ninth Circuit Court of Appeals, found that while it was a close case, because the statute involved did not require any fraudulent intent, and because there was no evidence of any damages at all as a result of the fraud, apparently this unlicensed person did a good job, that it was a close case. But under those extreme circumstances, it would, in fact, discharge a liability. This case is distinguishable because in this case there was harm, there was significant harm, including the loss of the $100,000 from Marsha Tequesta in May of 2011. And in this case, the statute relied upon does require fraudulent intent. Section 523 requires it. Common law, fraud, misrepresentation requires it. And it was proven over and over again in this case. Thank you, Your Honors. Thank you very much. We appreciate your argument. We have rebuttal. Thank you, Your Honors. Cohen v. De La Cruz was to clear out the wording in 523A2 that says, money obtained by fraud, and debtors' attorneys were saying, well, that meant the debtor actually had to get money. So Cohen v. De La Cruz says, oh, all damages caused by fraud, including punitive. Our argument has been that a bargain is not a damages caused by fraud. It's a benefit in the future that you haven't got. And to comment on one of the things the Justice has said, Justice Corman, is, yes, the loss, bad as it was, very, I'm not defending it, he didn't lose the equipment because he relied or because of the state of title. In fact, Mr. Flegel said he kind of didn't matter. My client was a major stockholder controlling person. There's no question that Mr. Flegel was entitled to that equipment. No court would have taken it away. It's not an issue between them. It never came up to the appeal, and nobody would have ever took it away. My guy broke the rule. He might have committed a crime. He went in and he took it. He brought big cranes. So there's nothing to do. No reliance caused that. My client, sorry, Your Honor, should not have done that. Listening to Mr. Sharp, it sounds like he's talking about breach of contract and the tort of conversion, exactly like he says. When Mr. Sharfman talks about all the monthly rent, that sounds like a contractual measure. When he talked about the subsequent business owner was going to give all these benefits, it's somewhat speculative to premise damages on a future contract with a future tenant that's never been signed.  The measure of damages for the lost rent can't be just, well, Mr. Ifiori got a discount and he paid 20% less, and we're going to measure it. He should pay 20% more, because that would be we'd be talking contract, which is hard, especially when you come to bankruptcy court, to not do that. But contractual debts are discharged. The way that has to be shown is based on we have the rental value. There was no expert about rental value. There was no proof that someone else would have paid more than Mr. Ifiori would have, and that was required. So the court could say, well, yes. Well, isn't it a fraud if you enter it into a contract with the intent never to perform it? Isn't that a fraud? That's a misrepresentation of all the elements of fraud. The first one, misrepresentation, sometimes referred to as fraud. And I'll go along. I will have to say the BAP and Mr. Scharf would be right on that in that not the title, but if they could show what was in my client's head, that I'm never going to give that equipment. I'm just saying all this so I can get what I want. So they would get the first element of fraud, but I'd still argue that they wouldn't get the damages. You can't call the lost equipment damages for fraud, fraudulently causing them to get in the contract when it was the contract itself that gave them the right to the equipment. Then how can you say I was defrauded into this contract? But I'll kind of pick and choose. I would like to keep the equipment. That part's OK, and I'll call that my damages. And there was no cross appeal, so I certainly hope your honors will reject the invitation to give even more damages. But I think they should be reduced. Did he fail you to turn over a turnkey operation, which he apparently never intended to do? That would be, again, the first element of misrepresentation, but he didn't have a turnkey operation, so the lie, the misrepresentation didn't cause him to lose a turnkey operation. In contractual fraud, usually you'll go back to square one before the person was induced to get in the fraudulent contract and put the party in that position he would have been in had he never got in the contract. And the position he would have been in is he didn't have Mr. Flegel, didn't have the equipment, he didn't have a turnkey operation. He had the prior contract, which gave my client the right to remove all the equipment under the fixtures rule, if it could be done without damage. And, again, I'm not defending its terrible behavior, but I don't think this court could, for instance, rule, well, it should really be a conversion judgment. And we're in bankruptcy court where a lot of people get, I mean, the court's familiar with Segal versus law, where someone just lied and everything like that, and yet under bankruptcy rules they got away with it. So in this case, it's not fraud, and that's why it's kind of awkward. Things are coming up, trying to pigeonhole this and put it in a fraud box, and we're having a thing where a contract is fraudulent, but the damages are the stuff you promised under the fraudulent contract. So I just think the court should not find 520A2 a violation. Okay. Thank you both for your argument. Thank you, Your Honor. We appreciate it. The case is argued as submitted.
judges: M. Smith, Owens, Korman